Filed 2/8/18 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re BETTIE WEBB<br><br>    on Habeas Corpus. | D072981<br><br>(San Diego County Super. Ct. Nos.<br>  HC11619 & SCS293150)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on January 31, 2018, be modified as follows:

1.  On page 1, the comma at the end of the first sentence of the counsel listing is deleted and replaced with a period.

2.  On page 4, the quotation mark before the word "shall" is deleted in the first sentence of the first paragraph.

3.  On page 4, footnote 4, an opening quotation mark is inserted before the words "A person shall . . . ."

4.  On page 5, the full citation to *People v. Standish* (2006) 38 Cal.4th 858, 884 following the first sentence in the first full paragraph is deleted and replaced with:

*People v. Standish*, *supra*, 38 Cal.4th at p. 884;

5.  On page 7, the first sentence of footnote 5 is deleted and replaced with:

See *Gray v. Superior Court*, *supra*, 125 Cal.App.4th at page 642; *In re McSherry*, *supra*, 112 Cal.App.4th at pages 861-862.

6.  On page 12, the word "support" is deleted and replaced with the word "supports" in the second line of the first sentence of the first paragraph.

7.  On page 14, the closing quotation mark following the word "bail" in the last full sentence of the second paragraph is deleted.

There is no change in the judgment.

BENKE, Acting P. J.

Filed 1/31/18 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re BETTIE WEBB<br><br>    on Habeas Corpus. | D072981<br><br>(San Diego County<br> Super. Ct. Nos. HC11619<br> & SCS293150) |

ORIGINAL PROCEEDING in habeas corpus.  Petition granted with directions.

Angela Bartosik and Robert Louis Ford for Petitioner,

Summer Stephan, District Attorney, Mark A. Amador and Marissa A. Bejarano, Deputies District Attorney, for Respondent.

Bettie Webb was arrested and eventually charged in a felony complaint with knowingly bringing controlled substances into a state prison (Pen. Code,[1] § 4573) and unauthorized possession of a controlled substance in a prison (§ 4573.6).  She posted a $50,000 bond in accordance with the bail schedule and was released.  At her arraignment, Webb pleaded not guilty to the charges, but over her objection the magistrate imposed a condition that she would be subject to a Fourth Amendment waiver, finding it had

---

[1]    Undesignated statutory references are to the Penal Code.

inherent authority to do so.[2]  She petitioned for a writ of habeas corpus in the superior court challenging the search condition.  Pointing out the magistrate had not made a verified showing of facts, the superior court denied the petition, citing facts developed at Webb's preliminary hearing.[3]

Webb files the present petition for a writ of habeas corpus contending the magistrate lacked statutory or inherent authority to impose the bail search condition, and imposition of the condition constitutes a pretrial restraint without due process protections such as notice and a hearing or any showing that she poses a heightened risk of misbehaving while on bail.  Webb has properly sought habeas relief on this issue.

---

[2]  The magistrate recited the waiver terms as follows:  "You will be the subject of a Fourth Amendment waiver, which means you must submit your person, property, vehicle, personal effects to search at any time and any place, with or without a warrant, with or without reasonable cause when required by a pretrial services officer, a probation officer, or any other law enforcement officer."  Thereafter, Webb moved the court to reconsider the condition.  The magistrate denied the motion.  It explained its reasoning in part:  "I believed then and I still believe that when you are dealing with a drug-related case, and more specifically a smuggling case, that it would suggest to the court that Ms. Webb had to get those drugs from somewhere.  That means that she has connections and contacts.  She herself may be involved in drug dealing.  And it's—the whole idea then is to make sure that while she is out, that she can be—that she is subject to a Fourth Amendment waiver, which allows her person—everything that the Fourth Amendment waiver allows her to do to make sure that society is protected from the further drug dealing, which, obviously is harmful to society."

[3]  In denying the habeas petition, the court stated:  "Here, it does not appear there was a 'verified showing' of the facts relied upon by the magistrate who imposed the Fourth Amendment waiver condition; at least not at the arraignment or at the hearing of the reconsideration motion.  Nonetheless, a preliminary hearing was held after the condition was imposed, and after the instant petition was filed (but before the [informal response] and Reply were filed).  At that preliminary hearing, there was testimony that petitioner smuggled into the prison a substance stipulated to be heroin in a useable amount.  This is sufficient to support the magistrate's imposition of the Fourth Amendment waiver condition."  (Footnotes omitted.)

2

(*People v. Standish* (2006) 38 Cal.4th 858, 884 ["it is settled that defendants may correct error in the setting of bail by seeking a writ of habeas corpus . . . ordering reconsideration of custody status or release"]; *In re Douglas* (2011) 200 Cal.App.4th 236, 247.) We issued an order to show cause, and conclude the trial court had no authority to condition Webb's bail on a waiver of her Fourth Amendment rights. Accordingly, we grant Webb's petition and order the search condition stricken from her bail order.

DISCUSSION

I. *Review Standard*

On this habeas corpus appeal, " '[o]ur standard of review is de novo with respect to questions of law and the application of the law to the facts.' " (*In re Hansen* (2014) 227 Cal.App.4th 906, 914.) Here, the basic facts are undisputed, and the question before us is primarily one of law. Additionally, the trial court did not conduct an evidentiary hearing in denying Webb's habeas petition below, but, as stated, merely cited testimony from her preliminary hearing. When, as here, a superior court considers a petition for habeas corpus without an evidentiary hearing, " 'the question presented on appeal is a question of law, which the appellate court reviews de novo. [Citation.]' [Citation.] Similarly, when a trial court makes findings 'based solely upon documentary evidence, we independently review the record.' " (Cf. *In re Stevenson* (2013) 213 Cal.App.4th 841, 857, quoting *In re Rosenkrantz* (2002) 29 Cal.4th 616, 677; *In re Zepeda* (2006) 141 Cal.App.4th 1493, 1497 [deferential review unwarranted where trial court holds no evidentiary hearing on habeas petition and court grants petition based solely upon documentary evidence].)

3

## II. *Legal Principles*

The California Constitution provides, with exceptions not applicable here, that "[a] person "shall be released on bail by sufficient sureties . . . ." (Cal. Const., art. I, § 12;[4] see *In re York* (1995) 9 Cal.4th 1133, 1139 & fn. 4 (*York*).) It prohibits excessive bail. (*Ibid.*) The Constitution further provides that the primary considerations of bail shall be "[p]ublic safety and the safety of the victim . . . ." (Cal. Const., art. I, § 28, subd. (f), par. (3); *Gray v. Superior Court* (2005) 125 Cal.App.4th 629, 642; *In re McSherry* (2003) 112 Cal.App.4th 856, 861.) California's Legislature has codified this principle in section 1275, which lists the factors to be considered in issuing a bail order. That section provides in part: "In setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case. The public safety shall be the primary consideration."

---

4    Section 12 of article I of the Constitution provides in full: A person shall be released on bail by sufficient sureties, except for: [¶] (a) Capital crimes when the facts are evident or the presumption great; [¶] (b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or [¶] (c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released. [¶] Excessive bail may not be required. In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. [¶] A person may be released on his or her own recognizance in the court's discretion."

4

(§ 1275, subd. (a)(1); see *People v. Accredited Sur. & Cas. Co., Inc.* (2004) 125 Cal.App.4th 1, 7 ["The unambiguous purpose of section 1275 is public safety"].)

A person charged with a bailable offense who seeks pretrial release from custody typically may either post bail, or alternatively seek the privilege of release on his or her own recognizance (OR). (*York*, *supra*, 9 Cal.4th at p. 1141; *People v. Standish* (2006) 38 Cal.4th 858, 884; § 1270, subd. (a) ["Any person who has been arrested for, or charged with, an offense other than a capital offense may be released on his or her own recognizance by a court or magistrate who could release a defendant from custody upon the defendant giving bail, including a defendant arrested upon an out-of-county warrant"].) As for the option of bail, superior court judges of each county are required to adopt and annually revise a uniform countywide bail schedule for bailable felony and misdemeanor offenses, as well as non-Vehicle Code infractions, and in doing so, they "shall consider the seriousness of the offense charged." (§ 1269b, subds. (c), (e).) For an accused who has not yet appeared in court, bail "shall be in the amount fixed in the warrant of arrest or, if no warrant of arrest has been issued, the amount of bail shall be pursuant to the uniform countywide schedule of bail . . . ." (§ 1269b, subd. (b); see *People v. Lexington National Insurance Corporation* (2015) 242 Cal.App.4th 1098, 1102.) The law provides without qualification that upon posting bail, "the defendant or arrested person shall be discharged from custody as to the offense on which the bail is posted." (§ 1269b, subd. (g).) Under this statutory bail scheme, a court that sets bail after having made the required section 1275 assessments has effectively determined that

5

releasing the accused person pending trial does not present an unreasonable public safety risk.

An accused who bargains for OR release, on the other hand, is statutorily required to, among other things, "obey all reasonable conditions imposed by the court or magistrate." (§ 1318; *York*, *supra*, 9 Cal.4th at p. 1141.) Hence, when an accused person seeks to be released from custody on OR, the Legislature is deemed to have granted courts or magistrates broad discretion to require that person to comply with all reasonable OR release conditions, including, in appropriate cases, a promise to comply with warrantless searches and seizures that may implicate a defendant's constitutional rights. (*York*, at pp. 1144-1147.) "Unlike [a person who has posted reasonable bail], a defendant who is unable to post reasonable bail has no constitutional right to be free from confinement prior to trial and therefore lacks the reasonable expectation of privacy possessed by a person unfettered by such confinement." (*York*, at p. 1149.)

In contrast, the Legislature makes no mention of a court or magistrate's authority to impose conditions for a person released on the scheduled amount of bail for a felony offense. (See *Gray v. Superior Court*, *supra*, 125 Cal.App.4th at p. 641.) Section 1275, pertaining to setting of bail generally, does not refer to conditions. (*Gray v. Superior Court*, at p. 642.) Bail conditions are referenced in only two Penal Code sections, one of which—section 1270—governs persons charged with misdemeanors.[5] The other, section

---

5     (See *Gray v. Superior Court*, *supra*, 125 Cal.App.4th at p. 642; *In re McSherry*, *supra*, 112 Cal.App.4th at pp. 861-862.) Section 1270 provides in part: "A defendant who is in custody and is arraigned on a complaint alleging an offense which is a

1269c, sets forth procedures (a peace officer declaration or application by the accused personally or through another) by which a court may depart from the bail schedule by either increasing or decreasing the bail amount. (§ 1269c; see *People v. Lexington National Insurance Corporation*, *supra*, 242 Cal.App.4th at p. 1103.) On such an application, the magistrate or commissioner "is authorized to set bail in an amount that he or she deems sufficient to assure the defendant's appearance or to assure the protection of a victim [or family members]," and "to set bail on the terms and conditions that he or she, in his or her discretion, deems appropriate . . . ." (§ 1269c.)

III. *There is No Statutory Basis for the Court's Imposition of the Fourth Amendment Waiver Bail Condition*

Here, as the People admit, Webb posted the scheduled amount of bail; she did not seek to decrease it, and neither the court nor any law enforcement officer suggested an increased amount was appropriate. No other scenario in which the Legislature authorized imposition of appropriate bail conditions—for misdemeanants or departures from the bail schedule—applies, and we will not insert text to the statutory scheme to accomplish a purpose that does not appear on its face. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545; *Aqua Vista Homeowners Association v. MWI, Inc.* (2017) 7 Cal.App.5th 1129,

misdemeanor, and a defendant who appears before a court or magistrate upon an out-of-county warrant arising out of a case involving only misdemeanors, shall be entitled to an own recognizance release unless the court makes a finding on the record, in accordance with Section 1275, that an own recognizance release will compromise public safety or will not reasonably assure the appearance of the defendant as required. Public safety shall be the primary consideration. If the court makes one of those findings, the court shall then set bail and specify the conditions, if any, whereunder the defendant shall be released." (§ 1270, subd. (a).)

1140.)  The best indication of Legislative intent are the words of the statutes the Legislature has enacted (*People v. Toney* (2004) 32 Cal.4th 228, 232) and though the Legislature knows how to write statutes granting a court or magistrate authority to impose bail conditions, it has not done so in this circumstance.  This is a sufficient indication of the Legislature's intent.  (Cf. *Staniforth v. Judges' Retirement System* (2016) 245 Cal.App.4th 1442, 1454; *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 825 ["Where statutes involving similar issues contain language demonstrating the Legislature knows how to express its intent, ' "the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes" ' "].)  In their return, the People concede no specific statute addresses a trial court's authority to impose a bail condition on a defendant who has posted reasonable bail for a felony offense. Under the circumstances, the magistrate lacked statutory authority to impose the Fourth Amendment waiver bail condition on Webb.

IV.  *The Court Did Not Possess Inherent Authority to Impose a Fourth Amendment Waiver Condition*

The magistrate here nevertheless issued the Fourth Amendment waiver condition on the theory that it had inherent authority to impose reasonable conditions under *In re McSherry*, *supra*, 112 Cal.App.4th 856 and *Gray v. Superior Court*, *supra*, 125 Cal.App.4th 629.  It stated that "a [Fourth] Amendment waiver condition is a reasonable condition of release when you are dealing with drug-related offenses."

8

We conclude the magistrate had no such authority to deprive Webb of her Fourth Amendment right, and her right under article I, section 13 of the California Constitution, to be free from unreasonable searches and seizures as a condition to her release after she posted the scheduled amount of bail. She is a pretrial releasee who has not been tried or convicted of a crime, she retains a reasonable expectation of privacy in her home, and she has a right to be free from confinement. (See *York*, *supra*, 9 Cal.4th at p. 1149; *Gray v. Superior Court*, *supra*, 125 Cal.App.4th at p 644; *Cruz v. Kauai County* (9th Cir. 2002) 279 F.3d 1064 ["one who has been released on pretrial bail does not lose his or her Fourth Amendment right to be free from unreasonable seizures"].) Persons who are released pending trial "have suffered no judicial abridgment of their constitutional rights." (*U.S. v. Scott* (9th Cir. 2006) 450 F.3d 863, 872.)

*York* informs our conclusion. In *York*, on a habeas writ filed by petitioners facing one or more felony drug charges, the California Supreme Court held that a trial court was not prohibited from conditioning OR release on the releasee's agreement to submit to random drug testing and warrantless searches and seizures. (*York*, *supra*, 9 Cal.4th at pp. 1137-1138.) The law setting forth requirements for an OR release agreement, section 1318, subdivision (a)(2), specifically authorized imposition of "all reasonable conditions" in connection with such release. (*York*, at p. 1146.) The court rejected the petitioners' argument that imposition of the conditions violated their Fourth Amendment and state constitutional right to be free from unreasonable searches and seizures, and their

9

California constitutional rights to privacy and due process. (*Id*. at pp. 1148-1149, 1151.)[6]

It held the conditions did not violate Fourth Amendment protections, distinguishing the rights of a person who bargained for OR release and cannot post bail from persons who have posted reasonable bail: "[P]etitioners' contention that the OR release conditions . . . inevitably violate the Fourth Amendment rights of OR releasees rests upon the flawed premise that a defendant who seeks OR release has the same reasonable expectation of privacy as that enjoyed by persons not charged with any crime, *and by defendants who have posted reasonable bail. Unlike persons in these latter categories . . . , a defendant who is unable to post reasonable bail has no constitutional right to be free from*

---

[6]    In *York*, the petitioners further contended that the OR release conditions infringed on their right to be presumed innocent. (*York*, *supra*, 9 Cal.4th at p. 1147.)  The court rejected the contention, relying on United States Supreme Court authority holding that the presumption of innocence had " 'no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun.' " (*Id*. at p. 1148, italics omitted, quoting *Bell v. Wolfish* (1979) 441 U.S. 520, 533.)  Though *Bell v. Wolfish* involved the rights of persons who were placed in a custodial facility before trial (*Bell*, at p. 523), according to *York*, its holding "mirrors established California law." (*York*, at p. 1148 [characterizing *Ex parte Duncan* (1879) 53 Cal. 410, 411 as holding "no presumption of innocence attaches to a pretrial determination of the amount of bail to be set"].)  *York* also relied on a District of Columbia case that stated "[t]he presumption of innocence . . . has never been applied to situations other than the trial itself.  To apply it to the pretrial bond situation would make any detention for inability to meet conditions of release unconstitutional." (*York*, at p. 1148, quoting *Blunt v. United States* (D.C.App. 1974) 322 A.2d 579, 584, superseded by statute on other grounds as stated in *Best v. U.S.* (D.C.App. 1994) 651 A.2d 790, 792.)  *York* concluded, "Clearly, whether a pretrial detainee is released OR with—or without—conditions has no bearing upon the presumption of innocence to which that person is entitled *at trial*." (*York*, at p. 1148.)  We fully appreciate that under *York*, the presumption of innocence doctrine is not a consideration in imposing or not imposing bail conditions, contrary to the suggestion of our concurring colleague.

10

*confinement prior to trial and therefore lacks the reasonable expectation of privacy possessed by a person unfettered by such confinement*." (*Ibid.*, italics added.)[7]

*York*'s import is that once a person has posted the required amount of bail, they have a constitutional right to be free from confinement, and maintain a reasonable expectation of privacy for purposes of Fourth Amendment protections. (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1224 [" 'The touchstone of Fourth Amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy" ' "].) Though *York* did not reach the propriety of a Fourth Amendment waiver in felony cases, we do so here, and accept *York*'s reasoning as a persuasive indication that such an infringement of Webb's constitutional rights after she has posted reasonable bail is unwarranted. " ' "[E]ven if properly characterized as dictum, statements of the Supreme Court should be considered persuasive." ' " (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 330; see also *State v. Continental Insurance Company* (2017) 15 Cal.App.5th 1017, 1033.)

---

7    *York* also held that the conditions were not unconstitutional because the person on OR release "is not required to agree to such restrictions, but rather is subject to them only if he or she consents to their imposition, in exchange for obtaining OR release." (*York*, *supra*, 9 Cal.4th at p. 1150.) *York* went on to reject the argument that the conditions violated equal protection principles, but declined to reach the propriety of the Fourth Amendment waiver condition on a person who has posted reasonable bail: "[W]e assume, without deciding, that petitioners are correct in asserting that warrantless drug testing and search and seizure conditions could not be imposed upon a defendant who is able to, and does, post reasonable bail . . . ." (*York*, at p. 1152.) It held the suggestion that section 1318 created an impermissible wealth-based classification was essentially a challenge that the bail process itself was unconstitutionally discriminatory, a contention it had previously rejected. (*Ibid.*)

11

Neither of the two cases relied upon by the magistrate presiding over Webb's arraignment, and the superior court on Webb's habeas petition, support imposition of a Fourth Amendment waiver bail condition under these circumstances. *In re McSherry*, *supra*, 112 Cal.App.4th 856 did not determine the propriety of bail conditions, much less a Fourth Amendment waiver condition, for an accused charged with a felony. Nor did it purport to recognize a court's inherent authority to set bail conditions in such a circumstance. In *McSherry*, the trial court imposed stay-away orders and an order prohibiting driving upon a defendant who had been *convicted of misdemeanors* (loitering around schools) and sentenced to custody. (*Id*. at p. 859.) The defendant, who had a lengthy criminal history of sexually abusing minors, sought to post bail pending appeal, which was expressly authorized as a matter of right in section 1272.[8] (*Id*. at pp. 858-860.) The question on his habeas writ was whether the trial court could also impose reasonable bail conditions. (*Id*. at p. 858.) Though the court did not clearly articulate petitioner's habeas arguments, the petitioner relied on authority holding that public safety was not a consideration in imposing bail conditions. (*Id*. at p. 861.) In addressing that point, the appellate court in *McSherry* observed that section 1270 permitted it to specify bail conditions for a person charged with a misdemeanor who is denied OR release, but that under section 1275 as amended in 1987, public safety was the primary consideration.

---

[8]     In part, section 1272 provides: "After conviction of an offense not made punishable with death, a defendant who has made application for probation or who has appealed may be admitted to bail: [¶] . . . [¶] 2. As a matter of right, before judgment is pronounced pending application for probation in cases of misdemeanors, or when the appeal is from a judgment imposing imprisonment in cases of misdemeanors."

12

(*Id*. at p. 861.)  It found "nonsensical" the proposition that the law authorized a court to impose bail conditions on a person merely charged with a misdemeanor, but the court was powerless to do so after a defendant had been found guilty of such a crime and deserving of the maximum sentence.  (*Id*. at pp. 861-862.)

In obiter dictum, the *McSherry* court expanded on the petitioner's unspecified arguments and their presumed consequences:  "Petitioner's arguments also lead to the conclusion that even though a court can set bail conditions for an unconvicted misdemeanant, it could not do so for a person charged with a violent or serious felony because 'conditions' are not mentioned in section 1270.1.  Likewise, if a defendant has been convicted of a felony, under petitioner's view, even though the right [to] bail is discretionary, the court is powerless to impose bail conditions even though the defendant's conviction may present a significant legal issue which could lead to a reversal and even though sections 1272 and 1272.1 require the judge to state on the record the reasons for or against granting bail.  This cannot be what the legislature intended."  (*In re McSherry*, *supra*, 112 Cal.App.4th at p. 862.)  Ultimately, the court held that given the constitutional right to reasonable bail, the Legislature's statutory framework and focus on public safety, the bail conditions in the circumstances presented were *statutorily* authorized: that section 1272 granted a trial court the right to place restrictions on the right to bail of a convicted misdemeanant as long as they related to public safety.  (*Id*. at p. 863.)

We decline to rely upon *McSherry*'s dictum.  But *McSherry* nevertheless cannot properly be read as granting courts or magistrates authority to impose conditions in

13

felony cases beyond that envisioned by the Legislature in its comprehensive bail scheme. Such a reading constitutes an impermissible amendment of the statutory scheme, contrary to the Legislature's expressed intent. The Legislature has not authorized bail conditions in such cases; but unconditionally requires that a person who has posted bail "shall be discharged from custody . . . ." (§ 1269b, subd. (g).)

Nor does *Gray* convince us to uphold the superior court's order. The court's decision in *Gray* rested on *McSherry's* dictum, as well as a criminal law treatise citing section 1269c,[9] to posit a "general understanding that the trial court possesses inherent authority to impose conditions associated with release on bail." (*Gray v. Superior Court*, *supra*, 125 Cal.App.4th at p. 642.) In *Gray*, the trial court at the request of the California Medical Board conditioned a medical doctor's release on bail on the surrender of his medical license. (*Id*. at p. 636.) The appellate court recognized that the court's bail condition lacked express statutory authority, as the physician was charged with felony counts. (*Id*. at pp. 641-642.) It nevertheless suggested, citing *McSherry*'s dictum, that the court could impose the condition so long as it was reasonable and intended to ensure public safety: "In *McSherry*, the court reasoned that if a trial court is statutorily authorized to impose bail conditions on a person charged with a misdemeanor [citation], then the Legislature surely intended similar conditions could be imposed when a defendant facing felony charges is released on bail." [Citation.] There appears to be little

---

9      (See Criminal Law Procedure and Practice (Cal CEB), § 5.35 ["Magistrates have the authority to set bail on conditions that they consider appropriate. Pen. [Code,] § 1269c"].)

14

dispute that a trial court may impose conditions associated with release on bail; the question is whether and to what extent the court's authority is limited. [¶] . . . [T]he court in *McSherry* concluded that because public safety is the Legislature's overriding theme in the bail statutory framework, and because the trial court has inherent power to impose bail conditions, it follows that the trial court may impose bail conditions intended to ensure public safety. [Citation.] [¶] Bail conditions intended for public protection must be reasonable, however." (*Gray v. Superior Court*, *supra*, 125 Cal.App.4th at p. 642.)

*Gray* ultimately held the license suspension condition was not per se unreasonable, but rather was unreasonable because it violated the physician's procedural due process rights to a noticed hearing, which he otherwise would have gotten had he appeared before the Medical Board. (*Gray v. Superior Court*, *supra*, 125 Cal.App.4th at pp. 638-639, 643.) Citing *York*'s distinction between a person on OR release and release on bail in conducting its reasonableness analysis, *Gray* concluded: "Here, Gray was able to post bail and therefore had a right to be free from confinement. The trial court cannot justify imposing bail conditions in a manner depriving Gray of due process or other constitutional rights on the ground that Gray would otherwise be confined and effectively deprived of those rights. Under the circumstances presented here, it was unreasonable to deprive Gray of his due process rights in connection with his professional license after he was able to post reasonable bail." (*Id.* at p. 644.)

*Gray*'s holding as to a court's inherent authority to impose a license suspension bail condition, to the extent it is at all relevant to the search condition imposed here, is

15

premised on *McSherry*'s unpersuasive dictum. And *Gray*, like *McSherry*, is inapposite, and does not support the court's imposition of Webb's Fourth Amendment waiver bail condition. Neither case permits a court to use its inherent "equity supervisory, and administrative powers" to exercise reasonable control over proceedings (see *In re Reno* (2012) 55 Cal.4th 428, 522) or " 'create new forms of procedures' " (*People v. Lujan* (2012) 211 Cal.App.4th 1499, 1507) so as to infringe Webb's fundamental Fourth Amendment rights against warrantless searches and seizures in this context. (Accord, *Innes v. Diablo Controls, Inc.* (2016) 248 Cal.App.4th 139, 143, fn. 5 ["Our inherent power to adopt litigation procedures [under *In re Reno*, *supra*, 55 Cal.4th 428] does not authorize us to create substantive shareholder rights beyond those expressed in the Corporations Code"; quoting *Doe v. City of Los Angeles*, *supra*, 42 Cal.4th at p. 545.) No court has inherent authority to ignore or violate the statutory bail scheme.

In its return, the People point to this court's statement in *People v. Internat. Fidelity Insurance Company* (2017) 11 Cal.App.5th 456, that "[t]he trial court has discretion to 'set bail on the terms and conditions [it] deems appropriate' " and the "power to impose reasonable bail conditions intended to ensure public safety." (*Id*. at p. 462.) In making the referenced remarks concerning the court's discretion to set bail conditions, this court cited to section 1269c, governing departures from the bail schedule. (*Id*. at p. 462.) *Fidelity* did not discuss or recognize a court's "inherent power" to set bail conditions; it involved an insurer's claim that bail conditions materially increased its risk under the bond, requiring the bond be exonerated. (*Id*. at p. 459.) In fact, as Webb points out, this court found Fidelity had forfeited its argument, made in reply, that the bail

16

conditions waiving the defendant's constitutional rights were unauthorized by law, and expressly declined to address it. (*Id.* at p. 464, fn. 2.) *Fidelity* does not purport to address the scenario facing us, in which an accused facing felony charges has posted scheduled bail.

Having concluded the trial court possessed neither statutory nor inherent authority to impose the Fourth Amendment waiver bail condition, we order the condition vacated. We need not reach Webb's contention that the court denied her due process rights to notice and a fair hearing in imposing the bail condition.

## DISPOSITION

The trial court is directed to vacate the portion of its bail order imposing the warrantless search condition, and ensure that the modification of bail is communicated to all relevant law enforcement agencies forthwith. The opinion will be final as to this court 10 days after the date of filing. (Cal. Rules of Court, rule 8.387(b)(3)(A).)

O'ROURKE, J.

I CONCUR:

HUFFMAN, J.

17

BENKE, Acting P.J.

I concur in the result.

I agree with my colleagues that, on this record, the trial court erred in imposing, as a condition of bail, a requirement that Webb waive her Fourth Amendment right to be free of warrantless or unreasonable searches of her person, property, vehicle, and personal effects. However, unlike my colleagues, I agree with the courts in *In re McSherry* (2003) 112 Cal.App.4th 856, 861 (*McSherry*) and *Gray v. Superior Court* (2005) 125 Cal.App.4th 629, 642 (*Gray*), that a trial court has inherent authority to impose conditions on a defendant's release, even when a defendant is able to post the amount of bail set forth in the court's bail schedule. As the court in *Gray* stated: "[A]lthough the statutory authority is limited, there is a general understanding that the trial court possesses inherent authority to impose conditions associated with release on bail. (See [*McSherry*]; 1 Criminal Law Procedure and Practice (Cont.Ed.Bar 7th ed.2004) § 4.26, p. 76 ['Magistrates have the authority to set bail on conditions that they consider appropriate. [Citation.]'].) In *McSherry*, the court reasoned that if a trial court is statutorily authorized to impose bail conditions on a person charged with a misdemeanor (see Pen. Code,[1] § 1270, subd. (a)), then the Legislature surely intended similar

---

[1]    All further statutory references are to the Penal Code.

conditions could be imposed when a defendant facing felony charges is released on bail. (*McSherry, supra*, 112 Cal.App.4th at p. 862.) There appears to be little dispute that a trial court may impose conditions associated with release on bail; the question is whether and to what extent the court's authority is limited." (*Gray, supra*, 125 Cal.App.4th at p. 642.)

Significantly, the inherent power recognized in *McSherry* and *Gray* has also been expressly recognized by the voters and the Legislature. In adopting Proposition 8 in 1982, the voters plainly recognized such an inherent authority and placed in our constitution the requirement that crime victims have the right to have "the safety of the victim and the victim's family considered in fixing the amount of bail *and release conditions for the defendant*." (Cal. Const., art. 1, § 28, subd. (b)(3), italics added.) The Legislature expressly recognized a trial court's inherent authority to impose conditions on release, even when a defendant is able to post cash bail. When a peace officer believes a bail higher than is set in a bail schedule is required or a defendant believes a lower bail is sufficient, section 1269c permits a magistrate to "set bail in an amount that he or she deems sufficient to ensure the defendant's appearance or to ensure the protection of a victim . . . and *to set bail on the terms and conditions that he or she, in his or her discretion, deems appropriate*, or he or she may authorize the defendant's release on his or her own recognize." (Italics added.) As the court's in *McSherry* and *Gray* noted, section 1270 subdivision (a) also expressly recognizes a trial court's inherent power to set bail conditions when a defendant has been charged only with misdemeanors.

I think we must recognize the practical necessity that in particular cases, in order to assure a defendant's appearance and *protect the public from harm*, a trial court has the power to impose conditions which restrain the behavior or provide monitoring of a defendant while criminal proceedings are pending—even where as here, the defendant has the ability to post cash bail.  In this regard, I note an accused felon's right to bail arises in the context of probable cause to believe the accused has committed a felony and has been detained.  Where there is probable cause to believe a defendant has committed a felony and criminal proceedings are pending, a trial court must assure the defendant's appearance and consistent with the right to bail, protect the public; *the presumption of innocence, which will operate at trial, has no application*.  (*In re York* (1995) 9 Cal.4th 1133, 1147–1148 (*York*).)[2]

In any event, given the recognition by both the voters and the Legislature of the inherent power of trial courts to add conditions when releasing a defendant on bail and

[2]     In finding that trial courts have no inherent power to place conditions on bail, the majority opinion requires that trial courts turn a blind eye to the risks a particular accused felon may present so long as the defendant has the wherewithal to post bail.  In doing so the majority not only expressly departs from *McSherry* and *Gray*, but reaches a result that appears to place emphasis on the absence of any determination of guilt.  That implication is of course at odds with the views expressed by the court in *York* with respect to the presumption of innocence.

In addition, while not dispositive here, I note that in providing defendants who have access to wealth with freedom from *any* pretrial restraint, the majority opinion reinforces the disparate treatment of wealthy and poor defendants in our bail system, a recent subject of some concern.  (See Pretrial Detention Reform, Recommendations to the Chief Justice, Pretrial Detention Reform Workgroup (October 2017), p. 1: "California's current pretrial release and detention system unnecessarily compromises victim and public safety because it bases a person's liberty on financial resources rather than the likelihood of future criminal behavior and exacerbates socioeconomic disparities and racial bias.")

the practical necessity that trial courts have such power in particular cases, unlike my colleagues I am unwilling to diverge in any respect from the opinions in *McSherry* and *Gray*.

Although trial courts have the power to impose conditions on defendants who post cash bail, I also agree with the court in *Gray*, that a court's power to do so is fairly narrow. (*Gray, supra*, 125 Cal.App.4th at pp. 642–643.) Clearly, a trial court's inherent power is not coextensive with a court's power when, as in *York*, *supra*, 9 Cal.4th at pp. 1148–1149, a defendant has asked for release, not as a matter of right, but under a trial court's discretionary power. As the court in *York* took some pains to explain, when a defendant is asking for relief from detention under circumstances in which he or she has no right to release, a trial court has fairly broad power to impose conditions on his or her release. (*Ibid*.) A trial court also has fairly broad powers when a defendant's guilt has been established either by plea or verdict and the defendant has asked to avoid custody and be released on probation. (See *People v. Relkin* (2016) 6 Cal.App.5th 1188, 1194.) In the procedural setting presented here, however, a court's inherent power must be carefully constrained. A trial court's inherent power is limited by, among other matters, the principle that public safety concerns *do not* permit *the outright denial* of bail where no specific constitutional provision permits it. (See art. 1, § 12, Cal. Const.; *People v. Standish* (2006) 38 Cal.4th 858, 877; *In re Underwood* (1973) 9 Cal.3d 345, 351.) Thus, any condition on bail may not be so onerous that it amounts to the denial of bail or places an unnecessary burden on the defendant's liberty.

4

Here, where Webb has exercised her constitutional right to bail and where at this stage of the proceedings her guilt has not been established, any invasion of her other constitutional rights must be closely connected to a risk of flight or a risk of harm to the community and based on a factual record which supports such an intrusion. Importantly, where a condition of bail invades a constitutional right, trial courts must consider whether the extent of the invasion is warranted by the nature and imminence of the risk, and whether, as the court in *Gray* determined, there are alternative means of protecting the public's interests. (See *Gray, supra*, 125 Cal.App.4th at pp. 642–644.) While it is true, as the trial court stated, that given the circumstances which gave rise to the charges against Webb, there is some likelihood she is a habitual drug user and associates with other drug users and distributors, on this record which comes to us only after her arraignment, I am not convinced the fairly intrusive remedy of imposing a Fourth Amendment waiver on her is appropriate. Such a waiver is unrelated to any flight risk and only indirectly related to preventing harm to the community, as opposed to Webb herself. A waiver certainly can be imposed as a condition of probation, when and if her guilt has been established, and the focus of the proceedings is no longer on her guilt or innocence but on rehabilitation and the prevention, over the long term, of future criminality.

Thus, I concur in the majority's direction that on remand the Fourth Amendment waiver imposed by the trial court be stricken. I would, however, do so without prejudice

5

to the right of the People to present a factual basis for imposing other conditions on Webb's bail.

I CONCUR IN THE RESULT:


BENKE, Acting P. J.

6